```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Gregory A. Smith,                 :

     Plaintiff,              :

  v.                              :     Case No. 2:11-cv-897

                                           :     JUDGE MICHAEL H. WATSON
Commissioner of Social Security,        Magistrate Judge Kemp

     Defendant.              :

## REPORT AND RECOMMENDATION

### I. Introduction

Plaintiff, Gregory A. Smith, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income. Those applications were filed on June 5, 2008 (disability) and May 28, 2008 (SSI) and alleged that plaintiff became disabled on April 1, 2004.

After initial administrative denials of his claim, plaintiff was given a hearing before an Administrative Law Judge on May 4, 2010. In a decision dated June 21, 2010, the ALJ denied benefits. That became the Commissioner's final decision on August 5, 2011, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on December 12, 2011. Plaintiff filed his statement of specific errors on March 20, 2012. The Commissioner filed a response on April 27, 2012. No reply brief was filed, and the case is now ready to decide.

### II. The Lay Testimony at the Administrative Hearing

Plaintiff's testimony at the administrative hearing is found at pages 35 through 45 of the record. Plaintiff, who was 55 years old at the time of the hearing and is a high school graduate, testified as follows.

After graduating from high school, plaintiff began working in a coal mine, but the mine shut down in 1979. After that, he worked variously as a carpenter, custodian, and meat cutter. He went back to the coal mines in 2001 and worked on and off for several years, but had difficulty due to nightmares about the job after another worker was killed. He stopped working in 2004 when he was sent to prison.

At the time of the hearing, plaintiff was seeing physicians at the Ford Street Clinic. He was also seeing a counselor at Jefferson Behavioral Health. He received counseling for depression and anxiety as well as post-traumatic stress disorder. His major problem is just being around people. He experiences difficulty concentrating and becomes nervous. He is able to go to the grocery store, however.

In a typical day, plaintiff would make his wife's breakfast, nap, do some chores, and cook dinner. He has some physical problems including arthritis and breathing difficulties, but the primary issue with working is due to his mental problems.

### III.  The Medical Records

The medical records in this case are found beginning on page 214 of the administrative record. The pertinent records - that is, those that relate to plaintiff's psychological impairments - can be summarized as follows.

Plaintiff began seeing a social worker, Mr. Bousquet, on December 5, 2001. Notes of sessions from 2001 through 2002 appear in the record. They reflect a diagnosis of PTSD and show that plaintiff was taking medication. In an accompanying cover sheet, Mr. Bousquet said he had no idea how plaintiff's disorder was affecting him in 2008. (Tr. 214-34). When plaintiff went to prison in 2004, a mental health screening was done, and he was not viewed as needing any mental health services. (Tr. 235).

On June 20, 2008, plaintiff's counselor, Mr. Taylor, filled

out a questionnaire indicating that he had first seen plaintiff for intake purposes on March 4, 2008, and had last seen him for counseling on June 19, 2008.  Plaintiff exhibited a depressed mood and had symptoms of PTSD.  He was quite suspicious of others.  Mr. Taylor noted some mild to moderate problems with concentration.  Plaintiff was diagnosed with major depression and chronic PTSD.  He did not have any cognitive problems but might have some problems completing tasks in a timely fashion.  He also had a social impairment which affected his ability to work with others, but there was a possibility that he could work alone.  (Tr. 301-03).

Mr. Bousquet subsequently saw plaintiff for purposes of a disability evaluation.  In a report dated September 2, 2008, he stated that plaintiff had been in counseling for the past four months and was depressed all the time.  Plaintiff seemed anxious during the evaluation and his mood was depressed and sad.  He reported a loss of interest in daily activities and described mood swings as well as trust issues.  His cognitive abilities were in the average range.  He described his daily activities as doing some household chores, watching televison, and occasionally visiting relatives or going fishing.  Mr. Bousquet also diagnosed a major depressive disorder, PTSD, and a personality disorder with dependent, avoidant and borderline features.  He rated plaintiff's GAF at 50 and concluded that plaintiff had a moderate limitation in his ability to relate to others, no impairment in his ability to understand, follow and remember simple instructions or directions, a moderate impairment in his ability to maintain adequate persistence and pace, and a moderate impairment in his ability to deal with the stress and pressure of everyday work activity.  (Tr. 322-28).  A state agency reviewer, Dr. Lewin, reached similar conclusions, noting that plaintiff "would be able to work at a steady pace to sustain simple tasks

and can relate[] at least superficially with others." (Tr. 329-46). That evaluation was affirmed by another state agency reviewer, Dr. Tishler, who also observed that plaintiff had not been fully compliant with counseling appointments and was completing various tasks such as painting a house and barn door without reporting flashbacks. (Tr. 362).

On January 20, 2009, Mr. Taylor provided a treatment summary. His summary showed little change in plaintiff's mood but some increase in productivity. He remained suspicious of others and continued to report flashbacks. His prognosis was "guarded despite treatment." (Tr. 363). In a subsequent letter, Mr. Taylor repeated many of these comments and noted some difficulty maintaining concentration, although plaintiff's memory was not impaired. His diagnoses were the same, and plaintiff's GAF was rated at 58. (Tr. 373-74). An attached mental capacity assessment form showed a marked limitation in the ability to work with others or relate to the general public, and also a marked inability to complete a workday or work week without interruption from psychologically-based symptoms. (Tr. 376). Mr. Taylor completed a somewhat similar form in April, 2010. (Tr. 420-21).

## IV. The Vocational Testimony

Mr. Bell, a vocational expert, also testified at the administrative hearing. His testimony begins at page 45. He characterized plaintiff's past jobs as ranging from medium to heavy, and from unskilled to semi-skilled.

Mr. Bell was asked some questions about a hypothetical person who was 55 years old and had plaintiff's education and work experience. Additionally, that person could work at all exertional levels, but could work only in a low-stress environment with no production line or assembly-type pace and with no independent decision-making required. Also, the person could do only unskilled work involving only routine and

-4-

repetitive instructions and tasks, and could not interact with the general public at all, and only minimally with co-workers and supervisors.  Mr. Bell testified that such a person could do a number of heavy, medium and light jobs such as kitchen attendant or office cleaner.  However, if the person were off task 20 percent of the time, no jobs would be available, and missing more than two days of work per month would also be inconsistent with sustaining employment.

> V.   The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 9 through 24 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured requirements of the Social Security Act through December 31, 2008.  Next, he found that plaintiff had not engaged in substantial gainful activity from his alleged onset date of April 1, 2004 through the date of the decision.  As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including major depressive disorder, posttraumatic stress disorder, and personality disorder with avoidant and antisocial traits.  The ALJ also found that these impairments did not meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but that he had nonexertional limitations including the need to work in a low stress environment with no production line or assembly line type of pace, no independent decision-making responsibility, no more than unskilled, routine and repetitive work, no interaction with the general public and no more than

occasional interaction with coworkers and supervisors.  The ALJ accepted the vocational expert's testimony that someone with such limitations could perform various jobs that existed in significant numbers in the regional economy, including truck unloader, kitchen attendant, or office cleaner.  As a result, the ALJ concluded that plaintiff had not demonstrated an entitlement to benefits.

VI.  Plaintiff's Statement of Specific Errors

In his statement of specific errors, plaintiff raises the following issues.  First, plaintiff argues that the ALJ erred in the weight he assigned to the opinion of plaintiff's treating therapist, Mr. Taylor.  Second, plaintiff argues that the ALJ did not include all of the relevant mental limitations in the hypothetical question posed to the vocational expert.  The Court generally reviews the administrative decision of a Social Security ALJ under this legal standard:

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"

-6-

Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

   The Court begins its analysis by stating the legal standard applicable to reviewing an ALJ's decision not to give controlling weight to the opinion of a mental health counselor who is neither a psychiatrist or a psychologist.  As explained in Potter v. Astrue, 2010 WL 2679754 (S.D. Ohio June 2, 2010), adopted and affirmed 2010 WL 2679753 (S.D. Ohio July 6, 2010), although such a counselor is not considered an "acceptable medical source," and therefore not subject to the treating physician rule stated in 20 C.F.R. §040.1527(d), a treating counselor's opinion cannot be rejected arbitrarily.  Rather, Social Security Ruling 06-03p provides that the opinions of such sources "are important" and must be evaluated "on key issues such as impairment severity and functional effects, along with the other evidence in the file."  Consequently, as in Potter, if it is not clear how the ALJ applied SSR 06-03p or arrived at a residual functional capacity finding, a remand may be in order, and the same result may be required if an ALJ's decision does not set forth "some basis for why he was rejecting the opinion" of a non-medical source.  Cruse v. Comm'r of Social Security, 502 F.3d 532, 541 (6th Cir. 2007).  It is important to keep in mind, however, that there is no requirement, as there is for opinions from treating physicians, that the ALJ articulate good reasons for his or her decision assigning specific weight to the opinion of such a source.  See, e.g., Mulkey v. Comm'r of Social Security, 2011 WL 4528485, *6

(W.D. Mich. June 14, 2011), <u>adopted and affirmed</u> 2011 WL 4528479 (W.D. Mich. Sept. 29, 2011)("[b]ecause [claimant's therapist] is not an acceptable medical source, the ALJ was not required to provide good reasons for the weight given to her opinions under §§ 404.1527(d)(2), 416.927(d)(2)").

The ALJ's decision in this case says the following about Mr. Taylor's evaluations of the severity of plaintiff's mental impairments.  After reciting in comprehensive detail the substance of each visit between plaintiff and Mr. Taylor, including plaintiff's description of his activities and Mr. Taylor's evaluations of plaintiff's abilities, the ALJ first noted that Mr. Taylor's report that plaintiff's GAF was 58 indicated no more than moderate symptoms.  Next, he stated that Mr. Taylor's opinion as to various marked impairments was not consistent with the evaluation done by Mr. Bousquet or to the record in its entirety.  He also noted inconsistencies between Mr. Taylor's opinions and his treatment notes, but still assigned some weight to those opinions.  Last, the ALJ stated that his residual functional capacity finding was based on the opinions of the state agency physicians.  (Tr. 22-23).

The specific criticisms which plaintiff has leveled at this portion of the ALJ's decision are that its rejection of Mr. Taylor's views is too cursory, that it omits reference to many of the factors set forth in SSR 06-03p, and that it incorrectly relies on isolated comments about plaintiff's social activities as evidence of an inconsistency between Mr. Taylor's treatment notes and his ultimate conclusions about how severe plaintiff's impairments actually are.  As part of his argument, plaintiff also contends that the opinions which the ALJ adopted in lieu of Mr. Taylor's were outdated and did not reflect a continued worsening of plaintiff's condition after 2008.

As to this last point, the Commissioner correctly notes that

several subsequent state agency reviewers examined the initial assessment done in 2008 and affirmed it.  The Court agrees that the record shows that the state agency reviewers' final opinions were not based on outdated information, so that plaintiff's argument on this issue lacks merit.

With respect to the ALJ's treatment of Mr. Taylor's views, it is true that the ALJ did not explicitly mention some of the factors set forth in SSR 06-03p, but, at the same time, the administrative decision shows that he was clearly aware of and took into account matters such as the length of the treating relationship, the number of counseling sessions, and the way in which Mr. Taylor supported his evaluation of plaintiff's mental capacity.  Each counseling session is detailed in the opinion, so that it reflects both the length of the treating relationship and the frequency with which plaintiff sought counseling.  The ALJ also noted several perceived inconsistencies between Mr. Taylor's determination that plaintiff had a number of marked impairments and his counseling notes, and despite plaintiff's efforts to downplay the fact that he appeared to socialize on occasion or to be comfortable in family settings, those statements do appear in the record, as does the continued discrepancy between Mr. Taylor's assignment of a GAF score which reflects only moderate impairments and his opinion that plaintiff has many marked impairments.  Additionally, the various state agency reviewers, including Mr. Bousquet, who actually examined plaintiff, were unanimous in their opinion that plaintiff could work despite his various psychologically-based symptoms.  Given that the ALJ was not required to articulate his reasons to the same degree as if Mr. Taylor had been an "acceptable source," and given the deference which this Court owes to an ALJ's resolution of conflicts in the medical evidence, see Burton v. Halter, 246 F.3d 762 (6th Cir. 2001), the Court finds no error in the way in which

-9-

the ALJ considered and assigned weight to the opinions of Mr. Taylor, plaintiff's treating counselor.

The only other error assigned by plaintiff relates to the hypothetical question posed to the vocational expert.  He asserts that no portion of the hypothetical question addressed Mr. Bousquet's finding that plaintiff was moderately impaired in his ability to deal with daily work stress or to adapt to changes in the workplace.  In particular, Mr. Bousquet found that "[t]he findings suggest that under the conditions of stress and pressure it is likely that the claimant will experience an exacerbation of his psychological problems."  (Tr. 328).  Plaintiff apparently reads this comment, which followed immediately after the finding of a moderate impairment in this area, to mean that due to his PTSD and his prior traumatic work experience, even a moderate impairment in this area might prevent him from working, and that the failure specifically to include that concept in the hypothetical question posed to Mr. Bell (and, by extension, in the ALJ's residual functional capacity finding) was error.

Here, however, the ALJ asked Mr. Bell to assume that plaintiff could work only in a low-stress environment with no production line or assembly-type pace and with no independent decision-making required and that plaintiff could do only unskilled work involving only routine and repetitive instructions and tasks.  These limitations are reasonably consistent with someone who has a moderate impairment in the ability to withstand the stress and pressure of a work environment.  Mr. Bousquet did not preclude plaintiff from engaging in any work activity, nor did he characterize plaintiff's impairment in the area of workplace stress to be marked.  A fair reading of this portion of his report is that because workplace stress could cause plaintiff's symptoms to worsen, he needed to be in a low-stress workplace so that the potential for exacerbation of his symptoms

was kept within manageable limits.  Thus, the Court finds no error in the way in which the ALJ incorporated this finding into the hypothetical question posed to Mr. Bell, or into the mental residual functional capacity finding.  Because Mr. Bell identified jobs which someone with that limitation, as well as the other limitations found by the ALJ, could do, and the ALJ reasonably relied on that testimony in finding that plaintiff could, despite his psychological impairments, engage in substantial gainful activity, the Court concludes that there is no basis upon which this case should be reversed or remanded to the Commissioner.

## VII.   Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

## VIII.   Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a

waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

                                                <u>/s/ Terence P. Kemp</u>
                                                United States Magistrate Judge